## SARGENT *v.* COVERT.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 298. Argued March 19, 1894. — Decided April 2, 1894.

The alleged invention, protected by letters patent No. 161,757, dated April 6, 1875, issued to James C. Covert for " improvement in clasps or thimbles for hitching devices," did not involve such an exercise of the inventive faculty as entitled it to protection.

THIS was a bill filed by James C. Covert against Joseph B. and George H. Sargent in the Circuit Court of the United States for the Southern District of New York for infringement of letters patent No. 161,757, dated April 6, 1875, issued to complainant for "improvement in clasps or thimbles for hitching devices," upon which a final decree was entered adjudging the patent to be good and valid; that the defendants had infringed the same; and that complainant should recover of the defendant Joseph B. Sargent the sum of $750, and of the defendant George H. Sargent, $250; and costs. From this decree an appeal was taken to this court.

*Mr. John Kimberly Beach* for appellants.

*Mr. H. A. Toulmin* for appellee.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

The patent in suit was issued April 5, 1875, and relates to a device used upon rope halters. That device consists of a tube adapted to slip upon a rope, and having on one of its sides an enlargement with interior screw-threads. A sharp-pointed screw is fitted to pass through the projection at right angles to the bore of the tube so as to enter the rope and hold the tube fast in any given position upon it. This set screw is provided with an eye for the reception of a snap-hook on the end of the hitching rope whereby a loop may be formed to pass around the neck or other part of the animal; the size of the loop being determined by the position of the thimble or tube on the rope.

The specification is accompanied by a drawing, in which Figure 1 was a perspective view, and Figure 2, a longitudinal section, of the alleged invention, Figure 2 being as follows:

This is thus described in the specification: "A represents a thimble of any suitable dimensions provided on one side with a nut or enlargement, *a*, having a hole through it with female screw-threads. The thimble A is fastened on the rope B at any desired place by means of a sharp-pointed screw, *Cx*, which passes through the thimble at the nut *a* and the rope. This screw is provided with a round eye, D, for the reception of a snap-hook."

The claim is: "The combination of the tube A, having the projection *a*, with interior screw-threads cast therewith, and the screw C, having the eye D and the sharp point *x*, for entering into the rope, all constructed as and for the purposes set forth."

The file wrapper and contents showed that the original

claim was : " The combination of the thimble A, rope B, and sharp-pointed screw C, provided with the eye D, substantially as, and for the purposes herein set forth ; " but the projection *a* in the claim allowed was not an essential qualification, and complainant insists that the words " cast therewith " do not refer to the " interior screw-threads," and only appear to do so through erroneous punctuation.   Defendants' screw-threads were made with a tap in the ordinary way.

In support of the defence of invalidity, defendants introduced a patent issued to John Wiard, June 9, 1868, for an " improvement in cattle tie," in the drawings accompanying which, Figure 2 represented " the adjustable socket of the halter," as follows :

This was described in the specification in these words : " B is a socket, constructed so as to pass freely over the rope, as in Fig. 1, and in one side of which is fitted a thumb screw, C, so that when the said thumb screw is turned hard down upon the rope, the socket will be held firmly in that position, and may be adjusted to different positions on the rope by loosening the screw, and sliding the socket accordingly.   The head of the thumb screw C is constructed with a hole, D, at each end, so as to form a means of attachment of the end of the rope thereto."

Comparing these two figures, it will be seen that they are alike except that the end of the screw in the patent sued on is sharpened and the screw has but one eye, whereas the end of the screw in the Wiard patent is blunt and it is provided with two eyes.   And these are the particular differences pointed out by complainant's expert, who also testified on cross-examination that if the end of the screw in the Wiard socket were made substantially like the sharpened point *x* of

the Covert patent, that would be, in his opinion, an infringement. According to his view, the most essential advantage of the invention in suit was that which resulted from having the end of the screw sharpened instead of flat, though, he added, "there are advantages in having a single eye to the screw, instead of a double one;" but nevertheless, that he did not "think the use of a double eye instead of a single one would evade the charge of infringement."

The advantages resulting from sharpening the point of the screw were stated by him to be "a sharp-pointed screw will enter the material of which the rope is composed and hold the thimble in a positive manner, and this is true even if the screw becomes slightly slackened; a flat-ended screw simply holds by frictional contact, and if the screw is slightly slackened does not prevent the thimble from being slipped out of place."

It appeared that the Wiard socket as actually made and sold had a convex end; that conical-pointed screws were in common use prior to the patent in suit; that complainant was acquainted with prior devices, including that of Wiard, and sought to improve upon them; and that the sales of his device were large.

Reference was made on the argument to testimony adduced on behalf of complainant tending to show an essential mechanical difference between the two devices in the use of one eye centrally located in the one, and the use of two eyes, each placed one side of the centre, in the other, and it was contended that the former was superior in that the latter was more exposed to being struck and unscrewed, and also exposed to the liability of the attaching hook being snapped "into the wrong eye, especially at night and in the dark, which is constantly the case during the winter months, when much of the caring for stock is done after nightfall."

But be this as it may, the claim of the patent was not limited to the use of a single eye, and it is apparent that the only material difference between the patented thimble and the Wiard socket to be considered is that the screw of the one had a rounded end and the other a sharpened point, while the

difference of operation is manifestly that a sharpened point will enter a material upon which it is directed, further than a rounded point. We cannot perceive in the recognition of the fact that facility of penetration is greater in a sharpened point than in a blunt one, any such evidence of invention as is sufficient to sustain this patent. Moreover, the Wiard screw, which is rounded at its end, is shown to enter the rope when screwed down hard, and in respect of the engagement between the rope and the socket or thimble to operate in the same way as the patented thimble. In other words, it holds by something more than frictional contact. Each of these screws compresses the rope within the socket, but the Covert screw, being sharpened, penetrates further than the other. The change is in degree and not in function.

We think the evidence fails to show that the Wiard socket was not a practicable and successful article, and agree with the remark of Judge Wallace in his opinion overruling the exceptions to the master's report, (38 Fed. Rep. 237, 238,) that: " The patented articles are not so superior to the other fastening devices as to give rise to any cogent presumption that those who purchased them of the defendants would have bought them of the plaintiff in preference to the other devices, and without reference to the difference in price, if they could not have bought them elsewhere."

We are of opinion upon this record that the alleged improvement was such a one as would have occurred to any one practically interested in the subject, and that it did not involve such an exercise of the inventive faculty as entitled it to protection.

*The decree is reversed, and the cause remanded with a direction to dismiss the bill.*

MR. JUSTICE JACKSON did not hear the argument, and took no part in the decision of this case.